Argument next in number 20-1472, Ethanol Boosting Systems, LLC v. Ford Motor Company, Mr. Healy. Thank you, Your Honor. May it please the Court, my name is Mr. Healy and I am arguing today on behalf of EBS and MIT. This appeal concerns the District Court's construction of 11 related fuel that is directly injected terms. Specifically, this appeal concerns the District Court's construction of a single word common to each of these terms, the word fuel, which the District Court construed to be limited to a, quote, fuel that, number one, contains an anti-knock agent that is not gasoline and, number two, is different from the fuel used for port injection. Both of these limitations, Your Honors, are wrong for at least two reasons. First, each claim, each term uses the exact same word, fuel, and there is no dispute that the plain and ordinary meaning of the word fuel includes gasoline. There's also no dispute that the specification specifically identifies gasoline as an exemplary fuel. Second, the justified... What's your response to your friend on the other side who says that the word fuel isn't really what we should be looking at? We should be looking at the full claim term, which is the phrase at issue, fuel that is directly injected. Yes, Judge O'Malley. My response is to look simply at what the court said, the District Court, that is. Appendix 9 and Appendix 10 set forth the court's order. At Appendix 10, the District Court specifically says, quote, the term fuel and these limitations is construed to require a fuel that contains an anti-knock agent that is not gasoline and that is different from the fuel used for port injection, slash, and the second fueling system. Right. He said the term fuel in this limitation, so he was talking about the broader phrase as that limitation, right? Absolutely, Your Honor, and certainly we don't object and we have never disputed the fact that the word fuel is as limited to these particular phrases. The core point from our perspective, Judge O'Malley, is that it's the same word. The word fuel is in both the port fuel injection terms and the direct fuel injection terms, and this court has been very clear that in, for example, the digital biometrics case, the same word appearing in the same claim should be interpreted consistently. I'd also point out, Your Honor, that the specification makes very clear that gasoline is a fuel. The point to the fact that the specification specifically identifies gasoline direct injection as a potential embodiment. So we think that it's very clear that the word fuel means fuel and that when the patentees intended to impart a different meaning, when they intended to limit it to a specific subset of fuel, they used a different word, anti-NOC agent. Is there anything in the specification that discusses or shows an embodiment where an anti-NOC agent is not used for direct injection? Yes, Your Honor. For example, if you would turn to page 5 of the common specification. And for purposes of today, just as we did in our brief, I'll refer to the common specification at Appendix 575, simply because it's the same across each patent. But that common specification identifies twice at a minimum what in turn the gasoline direct injection embodiment. It states, for example… Tell us what column and what line, please. Yes, Your Honor. I apologize. There's actually no comment, no columns in these references, but it's at page 5 of the common appendix. Let me just turn to give you, Your Honor, the appendix, specific appendix site. Page 5? Well, I'm confused. Isn't the specification we're referring to for the 839 patent? It does, Your Honor. There's also a common specification that was included with respect to the common application, and that's what certainly we have been citing to throughout our briefing. And so, if you'll turn, Your Honor, to Appendix 579, this is page 5, the common specification. It says, quote, at lines 25 through 27, it also is possible to use direct injection of gasoline as well as direct injection of ethanol. It then follows up on the very next page, Your Honor, which is Appendix 580, lines 5 through 7, stating again, referencing a gasoline direct injection embodiment, and stating that the direct injection of gasoline alone results in an effect equivalent to a five-octane number decrease in the engine's requirements. So, Judge O'Malley, to answer your question very specifically, these are the embodiments that we point to that, in our opinion, very clearly disclose the direct injection of gasoline alone. There's no dispute in this matter that the patent also very clearly contemplates the port and fuel injection of gasoline alone. And so, that is certainly... Aren't we talking about mixtures there? Your Honor, we are not. Certainly, and if you would turn, for example, to page 7, the specification makes very clear, and it says it specifically, that this is a gasoline direct injection embodiment. It identifies it with the acronym GDI. And so, certainly, it is not. It is a gasoline-only embodiment. And again, that's supported by the very next page, which discusses the anti-knock effect of directly injecting simply gasoline. And, Your Honors, we think that given the common plain ordinary meaning of the word fuel, which, again, the specification is clear, includes gasoline alone, and given these references, that it's incumbent upon Ford to demonstrate that the specification contains some, and I'm going to quote from this Court's Continental Circuit's decision, an expression that manifests exclusion or restriction, representing a clear disavowal of claims scope, a burden that this Court has described as exacting. Mr. Haley, Judge Clevenger, can I ask you a question, please? Absolutely, Your Honor. Yes. So, the purpose is that we agree with the District Court's construction... Judge Clevenger, you're breaking up. Can you hear me? Try that. Can you hear me, Mr. Haley? Assume that the first part of the claim construction is correct. What's wrong with the second half? Yes, Your Honor. Turning to the second limitation, there's a lot wrong with it, frankly, Your Honor. Number one, the limitation is directly contradicted by the claim. Again, I've stated, I won't repeat myself ad nauseum, but the claims use the same words to describe all types of fuel. My hypothetical excludes that argument. I'm saying that we reject your argument on the first aspect. Understood, Your Honor. Why is the second half wrong? Sure. I think the prime example, Your Honor, is Independent Claim 21 of the 826 patent. This is at Appendix 98. That patent expressly claims a, quote, fuel management system for a spark ignition engine where a fuel is provided by a first fueling system using direct injection and by a second fueling system using port fuel injection. This claim, frankly, couldn't make it any clearer. It shows that the patents not only permit the same fuel or granted a fuel mixture to be used in each fueling system, but that some claims 21, for example, specifically requires it. And so that is the first, certainly the clearest proof from our perspective, Your Honor. That's where there is no direct injection, right? No, apologies, Your Honor. No, Your Honor. Claim 21 specifically requires both direct injection and port fuel injection. And it specifies that the same, quote, a fuel, end quote, is provided by both the direct injection and the port fuel injection. So this is a clear indication that the same, and again, we fully understand that a fuel is understood in patent parlance to be one or more fuels. And our point is simply that the same singular fuel or the same combination of fuels are required by this claim. I also think it's important- Could we back up just a moment and look at the specification, which in column one talks about the more traditional gasoline alcohol mix that you find at the filling station, and it contrasts this invention with that and says that the effort here is to minimize the and it talks elsewhere about using two fuel tanks, one for ethanol or an ethanol-gasoline mix and the other one for gasoline. So the purpose of the invention here is to minimize ethanol, and ethanol has no advantage when it's injected into the port system, as I understand what the specification is saying, that it doesn't- the anti-NOx agent doesn't have the cooling effect when injected into the port, correct? Your Honor, it doesn't have the evaporative cooling effect by virtue of the fact that it's not being directly injected. It does, however, have a beneficial effect due to its inherently higher octane rating. And if that answers Your Honor's first question- No, no. I meant to ask more broadly about the distinctions here that are made about minimizing ethanol use, both in terms of where it's injected and in terms of how often, at what point it's injected. Yes, Your Honor. And I think Your Honor's present invention argument and the invention language and the specification. Two points to that, Your Honor. Number one, if you're looking at Appendix 576, the background of the invention, it makes very clear it says, this invention relates to spark ignition gasoline engines utilizing an anti-NOx agent. There's no limitation or even mention of the word direct injection as an object of the invention. The language Your Honor cited specifically states N objects. One of the objects of the present invention is to minimize the amount of ethanol or anti-NOx agent that is used. Certainly, our arguments and our position is that the district court's first limitation is directly inconsistent with that requirement. Turning a little bit further, Your Honor, to the Appendix 577, the next the invention statement states, in one aspect, the invention is a fuel management system for efficient operation of a spark ignition gasoline engine, including a source of anti-NOx agent such as ethanol. Again, language like this, one aspect apart, and as I've noted before, the remainder of the specification does include specific identifications of gasoline-only direct injection embodiment. Is there any place in the specification where it shows dual injection sites and the use of a single fuel gasoline for those both sites? Yes, Your Honor. In particular, let me just turn the page. If you would look again into the Appendix page 579, the specification- I tell you, this is really confusing to me because I've read the specification in the patents rather than in the application. I am having a hard time following your references to where I read it in the patents. I apologize, Your Honor. I'll do my best to relate the pages to the columns in the specification. I believe this is at Column 5, but the specification expressly states that the port fuel injection of gasoline is preferred. As I've talked about briefly today, and I don't want to belabor the point with Your Honors, certainly our interpretation and our belief that a PCETA would understand the specification to also expressly disclose the direct injection of gasoline alone. Therefore, that would be it. For the port injection? For both the port and the direct injection, Your Honor. For example, page- Column 5, Your Honor, states that the- What line number? Your Honor, this is at Lines 25 through 26. It states it is also possible to use direct injection of gasoline. If you would turn to Column 6 again, I believe, Your Honor, Lines 5 through 7 states direct injection of gasoline results in approximately five- Doesn't correspond to what I have here. Which patent? Your Honor, this is the common specification, so it's the same specification- Right, but we asked you to go to the patents themselves because they all share the same spec, right? The specification of each patent is slightly different. They're each a different patent, but if Your Honors have a preferred patent for me to refer to in lieu of the common specification, I'm happy to do that. Doesn't the language in the specification change as well? The common specification is in the record at 575 and following, and then there are various specifications in various patents. My understanding was that the specifications in the printed patents are not identical. Correct, Your Honor. They are not identical only to the extent that each one references its sort of evolving place in the continuation line, but once you get to the actual- what I would call the meat of the specification, for example, the summary, the description, the preferred embodiment, that text is identical across each patent. Well, why don't you take the 839 patent, which is the first one here? Yes, Your Honor. So, Your Honor, I'm at appendix page, I believe, 64. I apologize, appendix page 63. And, for example, Your Honor, this is at line 54 through 55 of column 3 states it is also possible to use direct injection of gasoline as well as direct injection of ethanol, a contrast of the preferred embodiment with the alternative embodiment. That doesn't correspond to my column 4, line 54. Column 3, Your Honor? Column 3, line 54? Yes, Your Honor. Okay. But doesn't that apply both together? It does not, Your Honor. And, for example, if you would turn the very next column, column 4 states, starting at page- I'm sorry, line 67, direct injection of gasoline results in approximately a 5-octane number decrease in the octane number required by the engine. And then the patent goes on to state in column 4, for example, at line 60 through 64, it describes this embodiment as, quote, gasoline direct injection, PREN, GDI, close parens. And we think that's a clear indication that this is a gasoline-only direct injection method. I'd also note, Your Honor, that to the consistent use of the term mix or mixture, those words are plainly absent from this description here. And so it's clear to us, and we believe it's clear to us at CETA, that this would be a gasoline direct injection-only embodiment. I do think it's certainly necessary to point out that the burden here is really to show, for Ford to show, that there is a clear disclaimer. They need to demonstrate, and this is something that this Court held in its AstraZeneca decision, as well as in its PolyAmerica decision, that ambiguous claim language is not enough. They must demonstrate that it's a clear expression of disclaimer. That's not entirely true. Philip's case makes clear that you look to the specification, which is the most reliable thing to interpret the claims. You don't have to find a disclaimer to use the specification to interpret the claim terms. Absolutely, Your Honor. No disagreement from us there. The point here is that the claims use the word fuel. The specification makes clear that gasoline is a fuel. So for Ford to now limit the claims, to limit them to requiring either the two limitations, either the requirement that there be an anti-knock agent or the requirement that there be, quote, different fuels, it's incumbent upon Ford, it was incumbent upon the District Court to identify the necessary expression of restriction or disclaimer in the patent language. Be assertive again about disclaimer as opposed to interpreting the claim term. Your Honor, and I apologize if I'm using the wrong terminology, I certainly do not disagree with what I understand to be your core position. In order to import a limitation from the specification into the claims, there has to be, or in order to import the limitations that are issue, there must be some, and again, this is the Continental Circuit's description, the specification must contain, quote, expressions of manifest exclusion or restriction. And so it is incumbent upon Ford to demonstrate... That's just not true. Phillips makes clear that interpreting claim language, you look to the specification, and that's the task that we have, and we don't have to find a disclaimer to agree with the District Court's construction here. And what I'm trying to do is to ask you to help us with the specification to show where it supports your interpretation of these claim terms as opposed to the District Court. Sure, Your Honor. Understood, and with respect to the disclosures of a gasoline direct injection embodiment, I've identified those references in the specification that disclose that. With respect to the different fuels, Your Honor, and I realize that my first bell is rung, and so I'll try to wrap it up. With respect to the different fuels requirements, so the second limitation, to provide Your Honors with some specific references, again, there's no dispute here, that the specification discloses that the port fuel injection of gasoline alone, the specification specifically states port fuel injection of the gasoline is, in fact, preferred. I've argued here why the specification also discloses gasoline direct injection embodiment. And to Your Honor's point, we understand that Ford disagrees. Ford states that this is merely a disclosure of the direct injection of a mixture of gasoline and ethanol. But the specification also discloses that the exact same combination can be port fuel injected. For example, this is Appendix 580, dates at lines 20 through 22, and I'll provide Your Honors with a citation to the State 3-9 specification as well. But it states at lines 20 through 22 that, quote, the ethanol and gasoline can be mixed together and then port fuel injected. So, frankly, Your Honors, under our interpretation of the specification and what we understand, as a procedure would understand, there's the direct and port fuel injection of the same fuel, gasoline. Under Ford's construction or interpretation of the specification, there's both the port and direct injection of the same mixture of fuels, namely gasoline mixed with ethanol. And so for... Oh, yeah. I think we're out of time. Unless my colleagues have further questions, we'll leave a few minutes for rebuttal here. Okay? Thank you, Your Honors. Mr. Conner? Yes, Your Honor. Can you hear me? Hello? Yes. Oh, yes. Thank you. Good morning. May it please the Court, this is Mike Conner for Ford Motor Company. This is a case where the court correctly construed... Why don't we start out by addressing the thing we were last talking about, whether the district court's construction on the second point is supported by the patent or whether it's incorrect. It's supported by the patent, Your Honor. We believe that the full, reading of all of the examples in the specification shows that there must be, as the district court construed, the fuel with the anodic agent that is in the direct injection that is different from the fuel used for the port injection or that's used in the second fueling system. For example, ethanol boosting systems argues that gas direct injection alone is covered by embodiments in the specification, and that's just not true. If you look at the 839 patent at column 3, they pointed to lines 55, 53 to 56, where it states that it is also possible to use direct injection of gasoline as well as direct injection of ethanol. That indicates that in the direct injection there, there must be both gasoline and ethanol. Referring to the examples that are said to reflect a gas direct injection only embodiment, for example, at the bottom of 839 patent column 3, that's appendix 63, they point to Stokes, which is prior art. Later in the specification, it points to advantages of direct injection of the ethanol only over problems with gasoline direct injection alone. In the, if you look at another one of the examples that is cited, which is, I'll refer both here to the so-called common specification appendix 579, and the same language is in appendix 63 in the 839 patent. It describes in the case of ethanol direct injection, and it goes on to describe direct injection of ethanol, and then it explains that here the gasoline is vaporized in the inlet manifold and does not contribute to cylinder-charged cooling. So here it explains that the gasoline is port-injected but not direct-injected, and that's what this invention is about, Your Honor. The background further explains that I'm... Where in the claim language, this is Judge Clevenger, is there a requirement that the fuels be different? I'm sorry, I was breaking up. Yes. Where in the claims do we see a statement that the fuels must be different for port and for direct injection? I think the... Well, it's in the claim language. The claim language separately identifies a fuel for direct injection and a fuel for port injection or through the second fueling system, Your Honor, so... Where in the claim language can you show me? Pick one of the patents or the original disclosure. I'm at a loss to find a claim that specifies the fuels must be different for port injection as opposed to direct injection. I don't think the claim language by itself says that. I mean, the claim language does indicate that you have a fuel, and the fuel can be different. I mean, Claim 21, for example, of the 826 patent that the opposing counsel cited indicates you can have a fuel in the direct injection and a fuel in the port injection. They can be different, Your Honor, and that's consistent with all of these claims. No claim requires that or suggests that the fuel in each one can be the same. And so if you look at the embodiments and the specification, and that's the only answer I can give is to look at the specification, Your Honor, and see what's described in the specification as the fuel for the injection and the fuel for the port injection. And in every example in the specification... For the direct injection, right, it's a fuel that has an anti-knock agent in it that is not gasoline. That's the claim. Yes, that's it. Let's accept that. And I'm saying, so be it. So what in the patent precludes the notion that you could use the same gasoline that is directly injected for the port? Well, I would look at the figures, for example, Your Honor. I'd look at figure one and the text in the specification that relates to figure one, and there you see that there's two tanks, right? There's an ethanol tank for direct injection. There's a gasoline tank for port injection. That's consistent with the other embodiment shown, which describes what do you do if the ethanol runs out? And the only embodiment there, Your Honor, is in figure five and the corresponding text. You have ethanol for direct injection. You have gasoline for port fuel injection. If the ethanol runs out, it provides that the engine can still run on a it's only port injection. So in both of the embodiments that are here described, there is a separate fuel, a different fuel in the direct injection from the port injection. Can you explain to me? Go ahead. In claim one and again in claim 15, it talks about the ratio of the torque values of the fuel. And so what is your definition of the torque values? I'm sorry, in the A39 patent? Yes, in the A39. Claim one and claim 15. Those talk about the two different injectors, and it says, wherein above a selected torque value, the ratio of fuel that is directly injected to fuel that is port injected increases. What does that mean? Well, that's consistent with, I think, figure two in the specification that describes it as the torque changes that the amount of fuel that is directly injected can increase, for example, relative to the amount of fuel that is port injected. It contemplates two different fuels, right? Yes. Correct, Your Honor. Correct. And that's consistent with the judge's claim construction of the claim terms. This is, you just can't read this patent specification as indicating anything other than a system that uses ethanol or another Adenoc agent that's different from the port injected fuel to improve the engine performance. These inventors didn't invent gas direct injection. That was known. These inventors didn't invent the idea of mixing at the refinery the ethanol and the gasoline and just injecting that into the engine. That was known. That's explained to be as such in the background. They disclosed something much more specific, which is the direct injection of the Adenoc agent, and it's different from the fuel and the port injection, and that's consistent with every single example in the specification. The smoke and mirrors of looking to snippets or excerpts out of context that make reference to gas direct injection doesn't change that understanding because they refer to the prior art in multiple examples. The longstanding federal circuit, well, I would just say that what's happening here is there was an invention that was disclosed with the original applications in 2004, and it resulted in continuation practice that extended for many years. The claims that are in these patents at issue were first presented in 2011, and EBS, ethanol boosting, is trying to stretch through these belatedly introduced terms, their invention of a dual fuel engine to attempt to cover single fuel engines like those that makes that EBS simply didn't invent, and that's why it's proper to look in accordance with the federal circuit longstanding authority, trustees of Columbia, Phillips, and others to look at the specification. First start with the claim language. It's clear that the judge here started with the proper claim language. He started with the claim, started with the claim term directly injected fuel and variations of that, and then he went to the patent specification and determined what is fuel or what is directly injected fuel mean in these patent claims, and he said that he looked at the full specification. It's clear from the discussion at the hearing that he looked at the full specification. He actually asked questions or made references to portions from the beginning to the end of the specification, so he considered the whole thing, and he properly considered the exact examples that ethanol boosting identifies here today. For example, the as well as language, which he found in the case of a direct injection to require or to mean both ethanol and gasoline, not gasoline being substituted instead of the ethanol. Can you tell me how the Ford engines actually work? Are they one injection or are they just one fuel? Well, the engines that were accused in the district court case of infringement have both port injection and they have direct injection. They use a single fuel. They use only gasoline. You go to the pump, you fill up your pickup truck or your car with whatever fuel is there, and that is the fuel that's used. There's no separate tanks. There's no separation of ethanol from gasoline. There's no mixing of separately contained ethanol and gasoline that the patent specification talks about. There is one fuel tank, and that one fuel tank supplies port injection, and that one fuel tank supplies direct injection with gasoline. Typically, the pump is ethanol enriched, correct? It can be, as was known in the prior part of the specification. And that's a reason why these patents can't cover that because that much is in the prior art, and they didn't disclose merely using the patent. The applicants here didn't disclose a system that merely uses one tank to feed both port injection and direct injection with the same fuel. Look at examples of figure one and two, and you'll see that there's a difference in the figure five. They disclose something much more narrow than that, and it's appropriate in accordance with the Tektronik case that we cited to understand and interpret the claims accordingly. Again, the district court's construction is consistent with every single example in the claims. The plain and ordinary meaning that ethyl boosting advances is divorced from the patent specification. They would have this court, and they would have had the district court look merely to the term fuel in isolation and determine that that means any kind of fuel, regardless of how it's being used, regardless of what the specification says, and that it can mean merely gasoline. Well, if fuel has its plain and ordinary meaning and means therefore only gasoline is sufficient, well, then ethanol is a fuel also. And if there's any doubt about that, the patent specification also tells us that ethanol is a fuel. Well, that would collide entirely with what the inventor, Cone, told the patent office was the present technology. They distinguished the prior art Krause reference on the basis that it was designed to operate on 100% ethanol. That can't be the case. It can't be that plain and ordinary meaning would apply and conflict with the distinction of the Krause reference and would lead to this absurd reading of the patents that would be divorced from what's explained where you have a different fuel in the direct injection and, you know, yet a different fuel in the port injection. The Phillips case indicates that the court should construe the claims if possible to meaning view would just simply untether the claims from the specification and render them ambiguous. There's a short specification here. It's only about, as your honor see, about three pages long in the printed patents. The specification, I think my time's up. Thank you, your honor. Okay. Thank you, Mr. Conner. Mr. Healy, you have two minutes. Thank you, your honors. I just have three points. Number one, I want to be very clear that Ford here has to demonstrate that both of the limitations are correct. The second limitation, your honor, is in fact to us more important. Contrary to what my friend said, Ford's accused vehicles, each one of them is configured to operate either on gasoline alone or on a mixture of gasoline and ethanol. So it is, so long as this court agrees with us on the second limitation, that is sufficient. And turning to that second limitation, your honors, the different fuels requirement. My friend represented that claim 21 of the 826 patent allows for a fuel to be injected by the direct injection system and a fuel, the thing, a fuel to be direct port fuel injected. That's simply incorrect. The independent claim 21 says, quote, fuel management system for a spark ignition engine, where a fuel is provided by a fueling system using direct injection and by a second fueling system using port fuel injection. It's crystal clear that that requires the same single fuel or the same fuel mixture to be injected by both techniques. And finally, your honors, with respect to the prosecution history, my friend references the prosecution history of a different patent, the original application. That original application expressly required there to be both a fuel and a separate anti-knock agent that was directly injected. It is in that context that the references and statements that Dr. Cohn made. And it is in the result of that context that those statements have no bearing on this, these patents, which expressly, and Ford admits this in the red brief, do not require these separate existence expressly in the claims of an anti-knock agent. Finally, your honor, Judge Dyke, you had asked me to provide you with the specification support for the ability of the embodiment where there's a direct and port fuel. I realized my time has expired. Could I finish this point, your honor? Finish. Your honor, again, specification, this is of the 839 patent, column three. Ford has represented that the statements here reference the direct injection of an ethanol gasoline mixture. Column four, lines 19 through 22 state, alternatively, the ethanol and gasoline can be mixed together and then port injected. And then obviously there's more to that paragraph. So to us, this is a very clear indication of these same fuels being both port and direct injected. There is absolutely no reference and no statement in the specification excluding that embodiment. Thank you, your honors. Okay. Thank you, Mr. Healy. Thank you, Mr. Connor. The case is submitted. That concludes our session for this morning. The honorable court is adjourned until tomorrow morning at 10 a.m.